# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

NNEKA PAPILLION                                §
                                               §
v.                                             §
                                               §
CONCHO COUNTY HOSPITAL                         §        CIVIL ACTION NO. 3:25-CV-1762-S
DISTRICT, DISCOVERY MEDICAL                    §
NETWORK, INC., BARBARA                         §
BOWMAN, ELIZABETH EURESTE, and                 §
ANITA AGUILAR                                  §

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants Concho County Hospital

District, Barbara Bowman, Elizabeth Eureste, and Anita Aguilar's Motion to Dismiss Plaintiff

Nneka Papillion's First Amended Complaint and Brief in Support ("Motion") [ECF No. 16]. The

Court has reviewed the Motion, Plaintiff's Combined Response and Brief in Opposition to the

Motion ("Response") [ECF No. 26], Defendants' Reply in Support of the Motion ("Reply") [ECF

No. 27], Plaintiff's Sur-Reply to the Reply [ECF No. 34], and the applicable law. For the following

reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to the extent set forth

below. The Court otherwise defers ruling on the Motion at this time.

## I. BACKGROUND

This case arises from alleged employment discrimination. In 2019, Defendant Concho

County Hospital District ("CCHD")[1] hired Plaintiff Nneka Papillion, a female African American

physician, to serve as Chief Medical Director and physician at the Concho Medical Clinic

("Clinic") and Concho County Hospital ("Hospital") in Eden, Texas. Pl.'s First Am. Pet.

---

[1] County hospital districts are provided for in the Texas Constitution and are created by specific acts of the state legislature. *See* Mot. 3-4.

("Complaint") [ECF No. 13] ¶¶ 10, 12-14. Plaintiff alleges that as part of her employment contract with CCHD, CCHD provided her with company-sponsored housing and agreed to repay Plaintiff's student loan debt. *Id.* ¶¶ 16-17. After agreeing to the contract, Plaintiff moved from Arkansas to Eden to begin her employment with CCHD. *Id.* ¶ 15. Plaintiff alleges that after her arrival in Eden, one of the CCHD Directors told the CCHD Chief Executive Officer that "a black would never make it in Eden, Texas." *Id.* ¶ 22.

In 2022, Plaintiff announced that she was expecting her first child. *Id.* ¶ 28. Plaintiff asserts that CCHD and Defendants Barbara Bowman, who at the time was an "affiliate" of CCHD, and Elizabth Eureste and Anita Aguilar, both members of the Board of Directors of CCHD (collectively, "Individual Defendants," and, together with CCHD, "Hospital Defendants"), were "dissatisfied" with Plaintiff's decision to have a child while the Clinic and Hospital were growing. *Id.* ¶¶ 5-7, 29-30. Plaintiff claims that Bowman urged her to reconsider having a child. *Id.* ¶ 30.

Plaintiff took maternity leave pursuant to her employment agreement with CCHD. *Id.* ¶ 32. Plaintiff alleges that CCHD had a "Caucasian female" physician temporarily fill her role while she was out on leave. *Id.* ¶ 33. Plaintiff claims that, while she was on maternity leave, she was forced to address "numerous errors and deficiencies" caused by the temporary physician. *Id.* ¶ 34. The CCHD CEO and medical staff allegedly encouraged Plaintiff to return early from leave "due to the disruptions" caused by the temporary physician. *Id.* ¶ 36. When Plaintiff returned from leave, she maintains that her medical practice "was severely compromised." *Id.* ¶ 39.

According to her Complaint, Aguilar and Eureste began to heavily scrutinize and criticize her when she returned from leave. *Id.* ¶ 40. For example, they allegedly blamed Plaintiff for financial shortcomings caused by the temporary physician, despite never scrutinizing the temporary physician's work. *Id.* ¶¶ 41-42. Plaintiff asserts that she spoke to the CCHD CEO

2

CCHD CEO multiple times, but Aguilar's and Eureste's conduct did not change. *Id.* ¶ 47. In June 2023, Plaintiff submitted a formal complaint to the CEO. *Id.* ¶ 48. According to Plaintiff, the CEO "acknowledged the complaint and stated that he would take action to address the issues raised." *Id.* ¶ 49. Plaintiff claims that she never received any follow-up communications regarding any actions taken. *Id.* ¶ 50.

That same month, Plaintiff says she "raised concerns" regarding a Hospital pharmacist. *Id.* ¶ 51. Plaintiff was concerned that the pharmacist, whom she identifies as a Pakistani male, was deleting patient prescriptions she sent to the pharmacy and claiming he never received them. *Id.* Plaintiff claims that, although "[a] neutral and impartial investigation" was never conducted, it was later determined that the pharmacist had in fact been deleting her prescriptions, "placing her medical license and patient vitality in jeopardy." *Id.* ¶ 52.

Plaintiff alleges that because of her complaint, Aguilar and Eureste "intensified their scrutiny" and continued to undermine her in professional and public settings. *Id.* ¶ 53. Bowman assumed the role of interim CCHD CEO a few months later. *Id.* ¶ 55. During open CCHD board meetings, which were livestreamed on Facebook, Aguilar and Eureste allegedly "openly spoke negatively" about Plaintiff, shared confidential information including patient data, Plaintiff's salary, and Plaintiff's home address, falsified data about Plaintiff's performance, and "actively turned local residents . . . against [Plaintiff]." *Id.* ¶¶ 56-62. Plaintiff alleges that one patient, "incited" by Aguilar's and Eureste's comments, appeared at Plaintiff's home and "aggressively demand[ed] to see her." *Id.* ¶ 63. Plaintiff claims that Eureste also spread a false rumor among Plaintiff's patients that Plaintiff was "taking her baby and going back to her country." *Id.* ¶ 65. According to Plaintiff, Augilar began driving through the Hospital parking lot, "attempt[ing] to

influence" Plaintiff's patients to "make negative statements about their medical appointments" with Plaintiff. *Id.* ¶ 66.

Plaintiff maintains that she repeatedly spoke with Bowman about her complaints, but Bowman took no "meaningful" action. *Id.* ¶ 67. Plaintiff then filed another formal complaint, this time with Bowman. *Id.* ¶ 70. Bowman "acknowledged the veracity" of Plaintiff's complaint but stated that she was unable to address Aguilar's and Eureste's behavior. *Id.* ¶ 71. After a subsequent board meeting escalated into a "heated altercation" that required police intervention, Bowman allegedly contacted Plaintiff and, "admitt[ing] she was fearful of what might unfold next," told Plaintiff that she was flying to Florida. *Id.* ¶¶ 72-73. Plaintiff claims that her "intolerable and dangerous work environment" and "fear[] for the well-being of her husband and newborn" led to her constructive discharge on October 2, 2023. *Id.* ¶ 74. At the time she resigned, Plaintiff claims she had no work performance issues. *Id.* ¶¶ 75-78. Plaintiff states that the Hospital Defendants replaced Plaintiff with a "Caucasian male" physician. *Id.* ¶ 98.

In the present case, Plaintiff brings claims for race discrimination, harassment, and retaliation under 42 U.S.C. § 1981; race, color, national origin, sex, and pregnancy discrimination, harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"); defamation, intentional infliction of emotional distress, breach of contract, and promissory estoppel under Texas state law; and violation of civil rights under 42 U.S.C. § 1983. *Id.* ¶¶ 87-151. Plaintiff seeks to recover punitive damages in connection with her Section 1981 claims. *Id.* ¶ 155.

4

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis County*, 910 F.3d 809, 811 (5th Cir. 2018)). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the district court to hear a case. The district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. FED. R. CIV. P. 12(h)(3).

## III. ANALYSIS

The Hospital Defendants move to dismiss Plaintiff's Section 1981, Section 1983, intentional tort, and promissory estoppel claims and request for punitive damages under Federal Rule of Civil Procedure 12(b)(1), arguing that they are immune from suit. Mot. 3-6, 8-10, 11-14. The Hospital Defendants also argue that Plaintiff fails to state a claim for relief on her Section 1981, Section 1983, breach of contract, and defamation claims. *Id.* at 3, 8, 10, 12. Finally, the Hospital Defendants contend that the Individual Defendants cannot be held liable under Title VII

5

or the ADA. *Id.* at 6-7. The Court analyzes Defendants' Motion relative to immunity from suit under Rule 12(b)(1) and that the Individual Defendants cannot be held liable under Title VII or the ADA, but defers ruling on the remainder of the Motion.

### A. Sections 1981 and 1983

Plaintiff brings multiple claims under Sections 1981 and 1983, which Defendants move to dismiss based on immunity and, in the alternative, for failure to state a claim. The Hospital Defendants assert that they are "entitled to governmental immunity" because CCHD is a governmental unit of the State of Texas. Mot. 3. Further, Defendants maintain that they "are immune from Section 1981 and Section 1983 claims based on Eleventh Amendment protections" because they are "arms of the state." Reply 2.

Under the Constitution, states are afforded two types of immunity from suit: Eleventh Amendment immunity and sovereign immunity. *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 296 (5th Cir. 2021) (citations omitted). Eleventh Amendment immunity "applies to suits between a state and a citizen of another state." *Id.* (citing U.S. CONST. amend. XI). State sovereign immunity, on the other hand, "generally prohibits private suits against states (including the plaintiff's home state)." *Id.* (citing *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 243 (2019)). The "sovereign immunity of the States . . . neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Franchise Tax Bd.*, 587 U.S. at 243 (citation and internal quotation marks omitted).

As to Eleventh Amendment immunity, Plaintiff "resides in Texas." Compl. ¶ 1. She has resided in Texas since 2019, and she worked in Eden, Texas, from 2019 to 2023. *Id.* ¶¶ 13, 74. Neither Plaintiff nor the Hospital Defendants make any allegations that Plaintiff is a citizen of any state other than Texas. Therefore, the Court concludes that Plaintiff is a citizen of Texas. Because

Plaintiff is a Texas citizen, this suit is not one between Texas and a citizen of another state. Thus, regardless of whether the Hospital Defendants are "arms of the state," the Hospital Defendants are not entitled to Eleventh Amendment immunity.

"[S]overeign immunity protects the State of Texas, state agencies, and their officers." *Tercero*, 989 F.3d at 297 (cleaned up). It does not protect "subdivisions of the State[.]" *Id.* (alteration in original) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008)). CCHD, "like all such countywide districts, is a political subdivision of the State." *Klein v. Hernandez*, 315 S.W.3d 1, 7 (Tex. 2010) (citation omitted). Therefore, the Hospital Defendants are not entitled to sovereign immunity. *See Tercero*, 989 F.3d at 297 (holding that political subdivisions cannot invoke sovereign immunity).

Because the Hospital Defendants are not entitled to either Eleventh Amendment immunity or sovereign immunity, they are not immune from Plaintiff's Section 1981 and Section 1983 claims.[2]

### B. Intentional Torts and Promissory Estoppel

Although the Hospital Defendants are not entitled to constitutional immunity, CCHD is a "'governmental unit[]' for purposes of the [Texas] Tort Claims Act [('TTCA')]." *Klein*, 315 S.W.3d at 7 (citation omitted). As a governmental unit, CCHD is immune from suit under the TTCA. *Aguocha-Ohakweh v. Harris Cnty. Hosp. Dist.*, 731 F. App'x 312, 316 (5th Cir. 2018) (citing *Martinez v. Val Verde Cnty. Hosp. Dist.*, 140 S.W.3d 370, 371 (Tex. 2004)). Governmental immunity also "protects government officers sued in their official capacities to the extent that it

---

[2] To the extent that the Hospital Defendants argue that state governmental immunity shields them from Plaintiff's Section 1981 and Section 1983 claims, their argument is foreclosed by precedent. *See Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 376 (1990) (explaining that, because the United States Supreme Court has held that "municipal corporations and similar governmental entities" are persons under Section 1983, state governmental immunity cannot establish immunity to Section 1983 claims (citations omitted)).

protects their employers." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009) (citation omitted).

### *i. Defamation and Intentional Infliction of Emotional Distress*

Plaintiff brings defamation and intentional infliction of emotional distress claims, alleging that the Individual Defendants made defamatory statements and engaged in extreme and outrageous conduct. Compl. ¶¶ 124-28, 136-39. While the TTCA waives governmental immunity for some claims, "it does not waive immunity for claims arising out of intentional torts." *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)). Defamation and intentional infliction of emotional distress are intentional torts. *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (citation omitted). Therefore, CCHD is immune from Plaintiff's defamation and intentional infliction of emotional distress claims. And because Plaintiff brings her claims against the Individual Defendants in their official capacities, Resp. 14, the Individual Defendants are also immune.[3] *See Alcala v. Tex. Webb Cnty.*, 620 F. Supp. 2d 795, 802 (S.D. Tex. 2009) (dismissing the plaintiff's defamation and intentional infliction of emotional distress claims asserted against a county and four individual employees in their official capacities on governmental immunity grounds). The Court dismisses without prejudice Plaintiff's defamation

---

[3] Plaintiff alleges, for the first time in her Response, that the Individual Defendants are not immune because they acted ultra vires. Resp. 18. A government official lacks immunity if she engages in ultra vires conduct. *City of Houston v. Hou. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (citation omitted). To bring an ultra vires claim, Plaintiff must "allege, and ultimately prove, that the officer acted without legal authority." *Id.* (citation omitted). However, "[i]f the injury has already occurred and the only plausible remedy is monetary damages, an *ultra vires* claim will not lie." *Id.* (citation omitted). Setting aside whether Plaintiff has adequately alleged an ultra vires claim, her own allegations show that she is no longer employed by the Hospital Defendants. Compl. ¶ 74. Therefore, her alleged injuries have already occurred, and her only available remedy is monetary damages.

and intentional infliction of emotional distress claims against the Hospital Defendants for lack of jurisdiction.

### ii. Promissory Estoppel

Plaintiff brings a promissory estoppel claim against CCHD, alleging that by promising stable employment, company-sponsored housing, and repayment of student loan debt, it induced her to relocate to Eden and work for CCHD. Compl. ¶ 141. Although the TTCA waives immunity for claims involving breach of a written contract, several Texas courts have held that promissory estoppel claims fall outside the waiver and are thus barred by governmental immunity. *Garza v. McCamey Cnty. Hosp. Dist.*, No. 22-CV-00129-DC-RCG, 2023 WL 8011094, at *6 (W.D. Tex. Feb. 8, 2023) (collecting cases). The Court thus dismisses without prejudice Plaintiff's promissory estoppel claim against CCHD for lack of jurisdiction.

### C. Title VII and the ADA

Plaintiff brings multiple claims under Title VII and the ADA. Compl. ¶¶ 97-122. The Hospital Defendants move to dismiss Plaintiff's Title VII and ADA claims against the Individual Defendants, contending that individuals cannot be held liable under Title VII or the ADA. Mot. 6-7. The Fifth Circuit "does not interpret [Title VII] as imposing individual liability." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (citation omitted). A "Title VII suit against an employee is actually a suit against the [employer]," and "a plaintiff does not have an action against both the [employer] and its officer in an official capacity." *Id.* (citation omitted). Individuals also cannot be held liable under the ADA. *See, e.g., Thompson v. City of Arlington*, 838 F. Supp. 1137, 1151 (N.D. Tex. 1993) (dismissing ADA claims against individual defendants). Plaintiff responds that she "clearly assert[s] liability against [CCHD]." Resp. 11. The Court

9

disagrees.[4] To the extent that Plaintiff brings Title VII and ADA claims against the Individual Defendants, the Court dismisses with prejudice those claims.

The Hospital Defendants further argue that the Complaint does not specifically plead a Title VII or ADA claim against CCHD. Mot. 6 n.1, 7 n.2. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). CCHD has received notice and responded, as shown by it appearing in this suit and joining the Motion. Therefore, the Court construes Plaintiff's Title VII and ADA claims as being brought against CCHD and denies the Motion on these claims.

### D. Punitive Damages

Plaintiff seeks to recover punitive damages under 42 U.S.C. § 1981(a). Compl. ¶ 155. But Section 1981(a) "precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions." *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 465-66 (5th Cir. 2001) (citation omitted). The Cout has already determined that the Hospital Defendants are a political subdivision. Therefore, the Court dismisses with prejudice Plaintiff's claim for recovery of punitive damages as to the Hospital Defendants. *See Hill Scott v. Dall. Cnty. Hosp. Dist.*, No. 3:08-CV-600-O, 2010 WL 71038, at *7 (N.D. Tex. Jan. 7, 2010) (granting summary judgment in favor of the defendant county hospital district on the plaintiff's claim for recovery of punitive damages under Section 1981(a) because the defendant was a political subdivision).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants Concho County Hospital District, Barbara Bowman, Elizabeth Eureste, and Anita

---

[4] Plaintiff alleges that the conduct at issue was "carried out by Individual Defendants in their roles at CCHD." Compl. ¶¶ 103, 108.

10

Aguilar's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [ECF No. 16]. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's defamation, intentional infliction of emotional distress, and promissory estoppel claims as to Defendants Concho County Hospital District, Barbara Bowan, Elizabeth Eureste, and Anita Aguilar. Further, the Court **DISMISSES WITH PREJUDICE** Plaintiff's Title VII and Americans with Disabilities Act claims against Defendants Barbara Bowman, Elizabeth Eureste, and Anita Augilar and Plaintiff's claim for punitive damages against Defendants Concho County Hospital District, Barbara Bowman, Elizabeth Eureste, and Anita Aguilar. The Court **DENIES** the Motion as to Plaintiff's Section 1981 and Section 1983 claims on Eleventh Amendment or sovereign immunity grounds. The Court defers ruling on the Motion in all other respects.

**SO ORDERED.**

SIGNED May 22, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

11